UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SHIRAZ HOOKAH, LLC, a Minnesota limited liability company, | Case No. 11-CV-2044 (PJS/JJK) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CITY OF MINNEAPOLIS, a municipal corporation, | |
| Defendant. | |

Randall D.B. Tigue, RANDALL TIGUE LAW OFFICE, PA; Rachel K. Nelson, WILLIAM J. KRUEGER, PA, for plaintiff Shiraz Hookah, LLC.

Gregory P. Sautter and Joel M. Fussy, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendant.

In July 2011, the City of Minneapolis (the "City") enacted an ordinance prohibiting any licensed tobacco dealer from providing a smoking device to a customer for sampling tobacco unless the customer first purchases the device.  2011-Or-054, § 1, July 1, 2011 ("Ordinance").  Plaintiff Shiraz Hookah, LLC ("Shiraz"), a tobacco dealer licensed by the City, brought this action in state court, challenging the validity of the Ordinance under the Equal Protection Clause of the United States Constitution, the Equal Protection and Takings Clauses of the Minnesota Constitution, the Minnesota Human Rights Act (Minn. Stat. §§ 363A.01-363A.43), and a Minnesota land-use statute (Minn. Stat. § 462.357).  The City removed the lawsuit to this Court and now moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all of Shiraz's claims for failure to state a claim.  For the reasons that follow, the Court grants the City's motion with respect to

-1-

Shiraz's federal claim and declines to exercise supplemental jurisdiction over Shiraz's state-law

claims.

## I.  BACKGROUND

The Minnesota Clean Indoor Air Act, Minn. Stat. §§ 144.411-144.417, generally

prohibits indoor smoking in public places.  The law provides certain exceptions, including one

for "the lighting of tobacco in a tobacco products shop by a customer or potential customer for

the specific purpose of sampling tobacco products."  Minn. Stat. § 144.4167, subd. 4.  But the

law expressly permits cities and counties to enact "more stringent measures to protect individuals

from secondhand smoke."  Minn. Stat. § 144.417, subd. 4(a).

Shiraz is a licensed tobacco dealer and operates a tobacco shop located near the corner of

Lake Street and Cedar Avenue in Minneapolis.  Compl. at ¶ 4 [Docket No. 1].  Shiraz's shop

consists of both a retail area and a sampling room.  In the retail area, customers may purchase

loose-leaf tobacco, hookah pipes, and other tobacco-related products.  In the sampling room,

customers may sample the tobacco that they purchase using a hookah provided by Shiraz.

Compl. at ¶¶ 4, 6.  (A hookah is a type of water-based pipe that is used for smoking loose-leaf

tobacco.  *See* Compl. at ¶ 4.)

In July 2011, the City enacted an ordinance that provides, in relevant part:

> [T]he operator of any tobacco products shop licensed under
> Section 281.10 of the Minneapolis Code of Ordinances is hereby
> prohibited from any of the following:
>
> > (a) Except for a bona fide sale of a smoking device,
> > providing or otherwise making available for use by
> > a customer, potential customer, or any other person
> > a smoking device for the purpose of sampling any
> > tobacco product. . . .

Minneapolis, Minn., Ordinance § 281.56(a), 2011-Or-054, § 1, July 1, 2011; Compl. at ¶¶ 10-11.

Shiraz contends that the Ordinance is discriminatory.  Under the Ordinance, according to Shiraz, it is easy for customers to sample cigars, because cigars can be sampled without the need for a separate smoking device.  (The City deems a cigar to itself be a "smoking device" used to sample the tobacco that makes up the cigar.)  But using a hookah to sample tobacco is practically impossible, because hookahs are large and expensive, and thus can neither be carried around by customers nor purchased by customers every time that they wish to sample tobacco.  Compl. at ¶ 12; *see also* Pl. Opp. Mem. to Mot. to Dismiss ("Pl. Opp. Mem.") at 4-6 [Docket No. 24].  Shiraz contends that the different treatment of hookah shops vis-à-vis cigar shops — and hookah smokers vis-à-vis cigar smokers — violates the Equal Protection Clause.

## II.  DISCUSSION

### A.  Standard of Review

Although the City moves for dismissal under Fed. R. Civ. P. 12(b)(6), both parties submit — and ask the Court to consider — materials outside of the complaint.  The City supports its motion with transcripts of a hearing before a committee of the City Council regarding the Ordinance, an email sent from Shiraz's owner to the City opposing the Ordinance, and a report from the World Health Organization concerning the health effects of smoking water-based pipes such as hookahs.  *See* Sautter Aff. Exs. 1-3 [Docket No. 23].  Shiraz counters with an affidavit from Shiraz's owner in which he makes numerous factual allegations that were not pleaded in the complaint.  *See* Jahangiri Aff. at ¶¶ 5, 7, 13-22 [Docket No. 25].  The Court declines to consider any materials outside of the complaint — with the exception of the legislative history of the

Ordinance, which is a public record[1] — and thus need not convert the City's motion to dismiss into one for summary judgment. *See Evans v. McDonnell Aircraft Corp.*, 395 F.2d 359, 361 (8th Cir. 1968); *see also* Fed. R. Civ. P. 12(d).

Under Fed. R. Civ. P. 12(b)(6), a court must accept as true a complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the plaintiff's factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In assessing a claim's plausibility, the Court may disregard any allegation that is conclusory. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (holding that "conclusory" allegations "are not entitled to the assumption of truth.").

---

[1]The Court may take judicial notice of public records and consider them on a motion to dismiss without converting the motion into one for summary judgment. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (agency regulation); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007) (state-court records).

B.  *Federal Equal Protection Claim*[2]

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids a state to "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Under the Clause, the government must generally treat similarly situated persons alike.  *See Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006).

1.  Threshold Test

As a threshold matter, the City argues that Shiraz has failed to state an equal-protection claim because it has not alleged that it has been, or will be, treated differently from similarly situated businesses.  *See Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) ("[T]o state an equal protection claim, appellant must have established that he was treated differently from

---

[2]As an initial matter, the City contends that this Court lacks subject-matter jurisdiction because Shiraz's claims are not ripe for judicial review.  The City concedes that the issues before the Court are purely legal and fit for adjudication, but the City contends that Shiraz has not established that it will suffer any harm.  Def. Mot. to Dismiss Reply Mem. at 4-5 [Docket No. 27].

The City is incorrect.  The Eighth Circuit has repeatedly held that a plaintiff such as Shiraz need not "await consummation of threatened injury" before filing suit to block a new statute or regulation.  *South Dakota Mining Ass'n v. Lawrence Cnty*, 155 F.3d 1005, 1008 (8th Cir. 1998) (internal quotations omitted); *see also Paraquad, Inc. v. St. Louis Hous. Auth.*, 259 F.3d 956, 958-59 (8th Cir. 2001).  Instead, a plaintiff must merely demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *South Dakota Mining Ass'n*, 155 F.3d at 1008 (internal quotations omitted).

In this case, Shiraz has demonstrated a "realistic danger" of being injured by the Ordinance.  The City does not dispute that it plans to enforce the Ordinance against Shiraz.  Nor does the City dispute that enforcement will cause injury to Shiraz.  Compl. at ¶ 24.  Unless enforcement is enjoined, Shiraz will have to either significantly change its operations or subject itself to fines and the possible revocation of its tobacco license.  *See Minneapolis, Minn., Ordinance* § 281.65 (setting forth penalties for noncompliance).  Shiraz's claims are clearly ripe for adjudication.

others similarly situated to him.") (internal quotations omitted); *see also Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("[B]efore we may reach the merits of their equal protection claim, we must determine if the plaintiffs and NSP inmates are similarly situated."). According to the City, Shiraz has failed to allege that it is similarly situated to a cigar shop because Shiraz has not alleged that cigar shops, like hookah shops, provide devices for sampling tobacco or that cigar shops, like hookah shops, derive most of their revenue from onsite tobacco sampling.

The City's argument is misplaced for two reasons:

First, the City's argument — although presented as an attack on the adequacy of Shiraz's complaint — is, in fact, a defense on the merits to Shiraz's equal-protection claim. Shiraz has adequately pleaded that its equal-protection rights were violated because, even though cigar shops also sell tobacco for onsite sampling, it is treated worse under the Ordinance than cigar shops. The City's argument that hookah shops such as Shiraz derive most of their revenue from onsite tobacco sampling, while cigar shops do not, may provide a rational basis for the difference in treatment. But that is an argument that goes to the merits of Shiraz's equal-protection claim.

Second, Shiraz seeks to protect both its equal-protection rights *and* the equal-protection rights of its customers. *See* Compl. at ¶ 15(a); *see also Craig v. Boren*, 429 U.S. 190, 195 (1976) (holding that vendors may assert the constitutional rights of their customers); *Postscript Enter., Inc. v. Whaley*, 658 F.2d 1249, 1252 (8th Cir. 1981) (same). As to its customers' equal-protection claims, Shiraz alleges that the Ordinance disproportionately burdens hookah smokers vis-à-vis cigar smokers. The proper inquiry, as far as Shiraz's customers are concerned, is not whether hookah shops are similarly situated to cigar shops, but whether hookah smokers are

similarly situated to cigar smokers.  The City has not pointed to a material difference between

those two groups.

Alternatively, the City argues that, even if hookah shops and cigar shops are similarly

situated, there is no difference in treatment under the Ordinance because the "prohibitions of the

ordinance apply equally to all tobacco shops . . . ."  Def. Mot. to Dismiss Reply Mem. at 11

[Docket No. 27].  This argument, however, confuses the nature of Shiraz's equal-protection

claim.  Shiraz is not arguing that the Ordinance is facially discriminatory or that the Ordinance is

being enforced in a discriminatory manner.  Instead, Shiraz is arguing that the Ordinance,

although facially neutral, is nevertheless unlawful because of the disparate *impact* that it has on

hookah shops and hookah smokers.

Turning now to Shiraz's equal-protection challenge, the Court must first determine what

level of scrutiny to apply to the Ordinance.  A classification based on a suspect category such as

race or national origin is subject to strict scrutiny and will be sustained only if the classification is

"suitably tailored to serve a compelling state interest."  *City of Cleburne v. Cleburne Living Ctr.,*

*Inc.*, 473 U.S. 432, 440 (1985).  A classification based on gender also receives heightened

scrutiny and will be invalidated unless the classification is "substantially related to a sufficiently

important governmental interest."  *Id.* at 440-41.  All other classifications are subject to rational-

basis review and will be upheld "if there is a rational relationship between the disparity of

treatment and some legitimate governmental purpose."  *Heller v. Doe*, 509 U.S. 312, 320 (1993).

2.  Strict Scrutiny

The Ordinance is facially neutral, as it treats all tobacco sellers (and tobacco buyers) alike.  Shiraz argues that the Court should nevertheless apply strict scrutiny because the Ordinance has a disproportionate *impact* on individuals of a particular race or national origin.  As explained above, Shiraz alleges that the Ordinance effectively prohibits the customers of hookah shops from sampling tobacco, while leaving the customers of cigar shops free to do so.  Compl. at ¶ 12.  The Ordinance discriminates on the basis of race and national origin, according to Shiraz, because cigars are "primarily used by caucasian Americans, while hookahs . . . are primarily used by person[s] of Middle Eastern or African origin."[3]  Compl. at ¶ 13.

It is well settled that "a facially neutral law . . . is reviewed under strict scrutiny only if it can be proved that the law was 'motivated by a racial purpose or object,' or if it is 'unexplainable on grounds other than race.'"  *Friends of Lake View Sch. Dist. Incorp. No. 25 of Phillips Cnty. v. Beebe*, 578 F.3d 753, 761 (8th Cir. 2009) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (internal citation omitted)).  Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979).  Disproportionate impact on a suspect class can provide *evidence* of a discriminatory purpose, but, in and of itself, does not *establish* a discriminatory purpose.  *See Vill. of Arlington Heights v.*

---

[3]With respect to the allegations of racial or national-origin discrimination, Shiraz only asserts the equal-protection rights of its customers.  Shiraz has not alleged that the Ordinance discriminates against the *owners* of hookah shops on the basis of race or national origin.  Shiraz has also not asked that the race or national origin of its owners be imputed to the business.  It is, in fact, far from clear whether Shiraz has a racial identity.  *Cf. Oti Kaga, Inc. v. South Dakota Hous. Dev. Auth.*, 342 F.3d 871, 880 (8th Cir. 2003) ("[W]e have yet to decide whether a corporation can have a racial identity.").

*Metro. Hous. Dev.*, 429 U.S. 252, 264-65 (1977) (citing *Washington v. Davis,* 426 U.S. 229, 241 (1976)).

The Eighth Circuit's recent decision in a similar case is instructive.  In *Friends of Lake View*, plaintiffs challenged a facially neutral Arkansas law that consolidated school districts that served fewer than 350 students.  578 F.3d at 756.  Plaintiffs argued that strict scrutiny should apply because, even though the law was facially neutral, the law had a disproportionate impact on predominantly African-American school districts.  The Eighth Circuit affirmed the district court's dismissal of the lawsuit for failure to state a claim, holding that strict scrutiny was not appropriate because the complaint failed to allege facts that "might prove that the facially neutral classification scheme . . . was motivated by a racially discriminatory purpose or that the scheme is unexplainable on grounds other than race."  *Id.* at 761.  The Eighth Circuit emphasized that an allegation that state officials "knew" that a law would have racially disproportionate effects is not sufficient to show discriminatory purpose.  *Id.* at 761-62 ("Since a discriminatory purpose requires more than a mere awareness of the consequences, [plaintiffs'] allegation of disproportionate impact is insufficient to state a claim upon which relief can be granted.") (internal quotations omitted).

Like the complaint filed in *Friends of Lake View*, the complaint filed by Shiraz in this case fails to allege sufficient facts to trigger application of strict scrutiny.  Shiraz's naked allegation that the "ordinance is plainly discriminatory on the basis of race and national origin," Comp. at ¶ 13, is conclusory and therefore "not entitled to the assumption of truth," *Iqbal*, 129

S.Ct. at 1950.[4]  Shiraz does allege facts that, if true, establish disproportionate *impact* on persons

of Middle Eastern and African origin.  But, again, disproportionate impact does not establish

discriminatory purpose, even if the legislative body was aware of the likely impact.  *See Friends*

*of Lake View*, 578 F.3d at 761; *Feeney*, 442 U.S. at 279.  In fact, Shiraz's complaint presents a

weaker case for strict scrutiny than the complaint in *Friends of Lake View*, because Shiraz does

not even allege that the City knew that the Ordinance would disproportionately burden members

of a suspect class, let alone facts that permit the inference that the City acted for the *purpose* of

burdening those individuals.[5]

---

[4]Shiraz's complaint also alleges that the Ordinance is racially discriminatory because it "prohibits a cultural practice which is Middle Eastern and African in origin, while Minn. Stats. Sec. 144.4167 expressly grants protection to cultural practices of Native Americans . . . ." Compl. at ¶ 15(b).  The problem for Shiraz is that it was not the City of Minneapolis — but instead the State of Minnesota — that decided to grant special privileges to Native Americans. The *State's* decision to favor particular groups is irrelevant to whether the *City* has violated the Equal Protection Clause.

[5]Shiraz's complaint does not mention the Ordinance's legislative history.  In its memorandum of law, however, Shiraz argues that the legislative history establishes that the City was targeting hookah shops when it enacted the Ordinance.  Pl. Opp. Mem. at 4-6; *see also* Sautter Aff., Transcript of Hearing before the Regulatory, Energy, and Environment Committee, June 20, 2011, Ex. 1 at 46 ("The amendment before you today stops short of a full ban on lighting and smoking in tobacco shops but does prohibit the practice of tobacco shops renting or allowing patrons to use smoking devices like hookahs.").  Shiraz also points to Council Member Lisa Goodman's reference to hookahs as "Middle Eastern style hubbly bubblies" as evidence of racial animus.  *See* Pl. Opp. Mem. at 5; Sautter Aff. Ex. 1 at 47.

Shiraz has not sought leave to amend its complaint to incorporate these new factual allegations.  But even if the Court were to allow Shiraz to amend its complaint, the complaint would still not plausibly allege that the City acted with a discriminatory purpose.

That the Ordinance may have been enacted to target hookahs does not mean that the Ordinance was enacted to target racial or ethnic minorities.  Shiraz must still allege facts that permit the inference that the City knew that hookahs were used primarily by minorities and, more importantly, that the City acted *because* hookahs were used primarily by minorities.  *Feeney*, 442 U.S. at 279.  Assuming for the sake of argument that Goodman's reference to hookahs

(continued...)

-10-

Because the Ordinance is facially neutral — and because the complaint is devoid of a single factual allegation that permits a plausible inference that the City acted with a discriminatory purpose — strict scrutiny is unwarranted.  The Court therefore applies rational-basis review.

### 3.   Rational-Basis Review

Under rational-basis review, the Court must uphold the Ordinance "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312*, 320 (1993).  Statutes and regulations are only rarely found invalid under rational-basis review; courts have taken to heart the repeated admonition of the Supreme Court that rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam).  All that is required for a statute or regulation to survive rational-basis review "is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Beach Commc'ns*, 508 U.S. at 313.  Because what matters are the facts that the government *could* have relied on when it enacted the challenged law — and not the facts that the government *did* rely on — courts may and often do

---

[5](...continued)
establishes that the City knew that hookahs were used primarily by persons of Middle Eastern descent, there is still nothing in the public record that suggests that the City acted *because* of hostility to persons of Middle Eastern descent.  *See Friends of Lake View*, 578 F.3d at 761 ("mere awareness" of disproportionate impact is not sufficient to establish discriminatory purpose); *see also Feeney*, 442 U.S. at 279.  To the contrary, the legislative history of the Ordinance does not contain a single reference to the race or national origin of the customers of hookah shops, with the sole exception of Goodman's remark.  Indeed, nothing in the legislative history contradicts the Ordinance's stated purpose of shutting down "smoking lounges [being operated] under the guise of tobacco sampling."  Sautter Aff. Ex. 1 at 29.

resolve equal-protection claims on motions to dismiss.  *See Knapp v. Hanson*, 183 F.3d 786, 789

(8th Cir. 1999) (noting that, when rational-basis review applies, courts may decide equal-

protection claims on motions to dismiss).

According to the legislative history, the City enacted the Ordinance to stop tobacco shops

from operating "sampling rooms" that were, in fact, indoor smoking lounges.  *See* Sautter Aff.,

Request for City Council Committee Action, June 20, 2011, Ex. 1 at 29 ("The proposed

amendment addresses an issue related to the establishment of smoking lounges under the guise of

tobacco sampling.").[6]  The provision of the Ordinance challenged by Shiraz was one of several

provisions[7] intended to stop tobacco shops from trying to exploit the loophole in the Minnesota

Clean Indoor Air Act permitting the "sampling [of] tobacco products."  Minn. Stat. § 144.4167,

subd. 4.  Clearly, the City perceived there to be a difference between a customer "sampling" a

tobacco product at a tobacco shop and a customer showing up at a tobacco shop to socialize with

other patrons in a smoking lounge.

As noted, although the Ordinance does not single out any particular type of tobacco seller

or buyer, Shiraz alleges that the Ordinance effectively creates a classification between, on the one

hand, hookah shops and hookah smokers, and, on the other hand, cigar shops and cigar smokers.

Assuming that Shiraz is correct, the Ordinance nonetheless survives rational-basis review.

---

[6]This document is a public record and is available at the City's website.  *See* http://www.minneapolismn.gov/www/groups/public/@council/documents/webcontent/convert_2 73508.pdf (last visited on Dec. 30, 2011).

[7]The Ordinance also prohibits tobacco dealers from charging customers an admission fee for access to indoor sampling rooms and from allowing customers to sample tobacco that was not purchased immediately before the time of sampling.  Minneapolis, Minn., Ordinance § 281.56(b) and (c).

To begin with, regulating smoking in public places for the protection of public health is plainly a legitimate government purpose. *See Barsky v. Board of Regents*, 347 U.S. 442, 449 (1954) ("It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there."); *Grand River Enter. Six Nations, Ltd. v. Beebe*, 574 F.3d 929, 942 (8th Cir. 2009) ("Unquestionably, the State possesses a legitimate public interest in the health of its citizens."); *Spudich v. Smarr*, 931 F.2d 1278, 1281 (8th Cir. 1991) (noting that the protection of health and safety is "clearly a legitimate interest"); *cf. Berman v. Parker*, 348 U.S. 26, 33 (1954) ("The concept of the public welfare is broad and inclusive.").[8] Anyone who lives or works in Minneapolis can attest to the fact that the City has been zealous in restricting smoking in public places.

Shiraz argues, though, that even if the City has a legitimate interest in regulating smoking in public places, the City still has not provided a rational basis for effectively banning tobacco sampling at hookah shops while simultaneously permitting tobacco sampling at cigar shops. Pl. Opp. Mem. at 15 ("[T]here is absolutely no showing that there is any difference whatsoever between the two establishments."). Shiraz is confused about who bears the burden of proof. The Supreme Court has made clear that "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320-21 (internal quotations and citations omitted). In other words, it is not the City's burden to prove that the Ordinance has a rational

---

[8]Shiraz argues in its memorandum (but did not plead in its complaint) that the Ordinance is not authorized by Minn. Stat. § 144.417, subd. 4(a), and therefore is preempted by state law. Whether the Ordinance is preempted by state law is irrelevant to whether the Ordinance furthers a legitimate government purpose. To conflate the two questions would effectively turn every state-law preemption challenge into a federal equal-protection claim.

basis; instead, it is Shiraz's burden to prove that the Ordinance does not have a rational basis. And, to meet that burden, Shiraz must identify and refute "every conceivable basis" which might support the Ordinance. *Id.*

In this case, there are several rational reasons that *could* have motivated the City to treat hookah shops and hookah smokers differently from cigar shops and cigar smokers:

- Hookah shops may be more popular than cigar shops and therefore attract more customers to their sampling rooms.

- Hookah smokers may spend more time "sampling" tobacco products than cigar smokers. In other words, the "sampling" going on at hookah shops may resemble social smoking (as opposed to bona fide sampling) more than the "sampling" going on at cigar shops.

- If sampling rooms in hookah shops (but not cigar shops) are functioning like indoor lounges or community centers, non-smokers may be more likely to visit hookah shops and be exposed to second-hand smoke.

- Hookah smoke may be more dangerous — to the smoker, to the bystander, or to both — than cigar smoke.[9]

---

[9]The City submits a report from the World Health Organization ("WHO") that concludes that smoke from water-based pipes such as hookahs may be more dangerous than other forms of tobacco smoke. Because this is a motion to dismiss, the Court does not consider the report as substantive evidence, nor does the Court make any findings about whether hookah smoke is more harmful or was perceived by the City to be more harmful. The Court merely notes that the WHO report reflects the fact that a rational person could fear that hookah smoke may be more harmful, and that, in turn, suggests a "reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313.

In short, after giving the matter just a few moments' thought, the Court has been able to identify several rational reasons that could support the City's decision to treat hookah shops and hookah smokers differently from cigar shops and cigar smokers.  Shiraz's complaint fails even to identify — much less allege facts[10] to "negative" —  these conceivable grounds of support for the Ordinance.  *Heller*, 509 U.S. at 320.   Shiraz's equal-protection challenge therefore fails.

Needless to say, this Court is in no way suggesting that the City did or did not act wisely in targeting tobacco sampling at hookah shops but not targeting tobacco sampling at cigar shops (if this is what the City did).  Identifying social problems and enacting laws to address those problems is a difficult and messy business, but it is the business of democratically elected legislators, and not judges.  As the Supreme Court has said:

> Defining the class of persons subject to a regulatory requirement . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration. . . . . [The necessity of drawing lines to delineate the bounds of the regulatory field] renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.

*Beach Commc'ns, Inc.*, 508 U.S. at 315-16 (internal quotations and citations omitted).

Because there is a "reasonably conceivable state of facts that could provide a rational basis for the [Ordinance]," *id.* at 313, Shiraz's claim under the Equal Protection Clause of the United States Constitution is dismissed with prejudice.

---

[10]Shiraz submits an affidavit from its owner in which he alleges that cigar shops similarly encourage prolonged indoor smoking by equipping their sampling rooms with couches and television sets.  Jahangiri Aff. at ¶ 5.  Because these allegations are not in the complaint, the Court does not consider them.

*C.  Supplemental Jurisdiction*

A federal court may decline to exercise supplemental jurisdiction over state-law claims if it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because this Court has original jurisdiction over only one of Shiraz's claims — and because that claim has been dismissed on a Rule 12(b)(6) motion — the Court finds that Shiraz's state-law claims should be decided by a state court.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Barstad v. Murray Cnty*, 420 F.3d 880, 888 (8th Cir. 2005).  The Court therefore declines to exercise supplemental jurisdiction over Shiraz's state-law claims and remands those claims to the state court from which this action was removed.  *See Cohill*, 484 U.S. at 357 ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.     Defendant City of Minneapolis's motion to dismiss [Docket No. 12] is GRANTED IN PART, and the claim of plaintiff Shiraz Hookah, LLC under the Equal Protection Clause of the United States Constitution is DISMISSED WITH PREJUDICE AND ON THE MERITS.

2.      Shiraz's state-law claims are REMANDED TO STATE COURT pursuant to

28 U.S.C. § 1367(c)(3).

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: December  30 , 2011                    s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge